The Honorable Jack Critcher State Senator P.O. Box 79 Grubbs, AR 72431-0079
Dear Senator Critcher:
You have asked for my opinion on the following questions:
 1. Is the potential investment of the assets of the Newport Police Pension Fund in the Mainstay Funds offered by the New York Life Insurance Company legal under all applicable provisions of state law?
 2. Does the Newport Police Pension Fund meet the requirements for a Contingent Deferred Sales Charge (CDSC) waiver provided to qualified retirement plans as outlined in the Mainstay Funds' prospectus?
RESPONSE
With respect to your first question, subject to the assumptions discussed below, it is my opinion that the proposed investments are impermissible under Arkansas law, although the Code is admittedly somewhat confusing. I assume this response moots your second question, which, in any event, involves an issue of contract interpretation best addressed by local counsel. By statute, my advisory function is limited to counseling various public servants and entities on the construction and application of Arkansas constitutional and statutory law. A.C.A. § 25-16-706. Moreover, under A.C.A. § 25-16-701, I am precluded from engaging in or assisting the private practice of law. I will therefore respectfully decline to address your second question. I will note, however, that the answer to your question would appear to be contained in the Statement of Additional Information that explains the CDSC waiver policy — information not included in the material you provided me.
Question 1 — Is the potential investment of the assets of the NewportPolice Pension Fund in the Mainstay Funds offered by the New York LifeInsurance Company legal under all applicable provisions of state law?
As you point out in your request, one of my predecessors opined almost ten years ago that local fire and police pension and relief funds could legally invest in all types of mutual funds using the services of an investment advisor. Opinion No. 90-178 (copy attached). As discussed below, I question certain of the conclusions set forth in that opinion.
Section 24-10-402 of the Arkansas Code sets forth the general rules governing the investment of funds from a local police and fire retirement system. Subsection (a)(1) specifies that "[t]he board shall be the trustee of the funds of the system, subject to the other provisions of this subchapter." Subsection (a)(2) provides that if the system holds assets in excess of $500,000, funds may be invested using the services of an investment advisor. Subsection (a)(2)(A)(i) expressly provides that any investment advisor retained "shall formulate the policy to be followed in future investment activity," subject to a notification requirement in case of any change in policy. Subsection (a)(2)(B) affords the investment advisor "full power to purchase, sell, assign, transfer, or dispose of any of the moneys or investments of the system pursuant to the provisions of this subchapter and in accordance with the current investment policy filed with the board." Subsection (a)(2)(E) reserves to the board the right to conduct "specific investment activity" if it so chooses.
Subsection (a)(2)(G), which in my opinion bears crucially upon your request, provides as follows:
 (G) Anything in this section to the contrary notwithstanding, until the assets of the system amount to at least five million dollars ($5,000,000), the funds of the system not in the checking account may be invested in shares of no-load mutual funds, each of which shall have the following characteristics:
 (i) The mutual fund shall be an open-end diversified investment company registered under the Federal Investment Company Act of 1940, as amended;
 (ii) The management company of the investment company shall have been in operation for at least ten (10) years and shall have assets under management of more than one hundred million dollars ($100,000,000); and
 (iii) There shall be no sales charge for purchasing shares of the fund and no redemption charge for selling the shares. . . .
(Emphasis added.)
Before discussing the implications of the highlighted language, I should mention several related statutes that bear on the investment powers of boards and investment advisors. Subsection 24-11-410(a) of the Code grants the board of trustees of the policemen's pension fund the power under specified conditions to invest in interest-bearing government bonds, in a local government investment trust, in the Arkansas Local Police and Fire Retirement System, or in authorized savings and loan associations. Subsection (c)(1) of this statute authorizes the employment of an investment advisor in any pension or relief fund in which assets exceed $500,000, subject to the restrictions set forth in A.C.A. §§24-10-401 through 24-10-411. Subsection (c)(2) provides that if an investment advisor is employed, "[i]nvestments shall not be limited to interest-bearing bonds."[1]
Finally, A.C.A. § 24-10-402(a)(2)(F) dictates that any investment activity in a local police and fire retirement system will be subject to the same conditions imposed upon state public employee retirement plans. Among these conditions is the prudent investor rule codified at A.C.A. § 24-3-417 et seq., which basically imposes upon the investor a duty of reasonable care, skill and caution. Subsection 24-3-418(e) provides that "[t]rustees may invest in any kind of property or type of investment consistent with the standards of this subchapter."
For purposes of my analysis, I am going to assume that the Newport Police Pension Fund has assets in excess of $500,000, since you have indicated that the board has retained an investment advisor. Although you do not address this issue in your request, I am further going to assume that the assets in the system do not exceed $5,000,000. Furthermore, because you describe the proposed investments in your request as either "front-end loaded" or "back-end loaded," I am going to assume that the proposed purchases are not "shares of no-load mutual funds." (Emphasis added.) (As discussed below, this assumption would obviously not apply if a CDSC waiver of all "loads" were available to the fund as a qualified retirement plan — a determination I am unable to make.) The question, then, is whether under the statutory scheme I have just outlined, either the board or the investment advisor may purchase any mutual funds other than "no-load" funds before the system has attained assets exceeding $5,000,000.
In my opinion this question must be answered in the negative. The statutory scheme at issue clearly envisions that at a certain point in the development of a system — namely, when it accrues assets of $500,000 — the benefits of investment advice begin to outweigh the costs. Accordingly, A.C.A. § 24-10-402(a)(2) authorizes employment of an advisor at this point. It is further apparent in considering A.C.A. §§ 24-10-402
and 24-11-410 that the legislature intended a professional advisor to have some greater degree of discretion in investment than would an unadvised board of trustees. However, regardless of how liberally one might want to read the statutes defining the investment advisor's greater discretion, they are still subject to the restrictions set forth in A.C.A. § 24-10-402(a)(2)(G), which by its very terms will brook no statutory contradiction. In my opinion, in declaring that an investment advisor may invest in shares of no-load mutual funds if a system has assets between $500,000 and $5,000,000, the legislature was indicating, albeit rather obliquely, that the advisor could not purchase any loaded mutual funds until the system enjoyed the degree of security $5,000,000 in assets would reflect. If the legislature had intended otherwise, there would have been no point in reciting the higher figure. The only other conceivable reason for setting this upper limit would be that the legislature intended to deny the investment advisor of a highly funded system the discretion to continue investing in no-load funds — an interpretation that is unacceptable on its face. In short, it is my conclusion that the legislature has sanctioned investments of the sort you describe only for systems that have over $5,000,000 in assets.
Question 2 — Does the Newport Police Pension Fund meet the requirementsfor a Contingent Deferred Sales Charge (CDSC) waiver provided toqualified retirement plans as outlined in the Mainstay Funds'prospectus?
As I have previously noted, the determination of whether a contractual waiver provision applies is better addressed by your investment advisor and the city attorney, since it does not implicate the application of state law. I can only opine that if the waiver applies and its effect would be to relieve the Newport Police Pension Fund of any "load" on its investments, the investments might qualify as no-load and hence be permissible under Arkansas law. I have found no authority directly addressing this point.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JHD/cyh
Enclosure
[1] Section 24-11-805 of the Code closely tracks the statute just discussed with respect to the firemen's relief and pension fund, varying only in that it (a) permits investment in certificates of deposit or time deposits in addition to the other enumerated vehicles; (b) sets at $100,000 the assets floor at which an investment advisor might be retained; and (c) directs that investments handled by an investment advisor "shall not be limited to interest-bearing bonds, certificates of deposit, and time deposits." This lower figure for firemen's pension funds reflects a 1999 amendment that does not apply to police pension funds.